IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

PRADERA SFR, LLC,

                *Plaintiff*,

v.

AMERICAN HOUSING VENTURES, LLC,

                *Defendant*.

Civil Action No. 5:24-cv-01036

## COMPLAINT

Plaintiff Pradera SFR, LLC ("Pradera SFR") files this complaint against Defendant American Housing Ventures, LLC ("AHV") and alleges as follows:

## NATURE OF THE ACTION

This is a straightforward indemnification claim. Pradera SFR and AHV entered into a Development Agreement in connection with a real-estate development ("the Pradera Project") under which AHV as Development Manager served as Pradera SFR's agent and pursuant to which AHV owes Pradera SFR certain duties. Under the terms of the contract, AHV must indemnify Pradera SFR if it fails to fulfill those duties. Through the acts detailed below, AHV breached its duties to Pradera SFR, exposing Pradera SFR to liability for copyright infringement asserted by third party Kipp Flores Architects, LLC ("KFA") in *Kipp Flores Architects, LLC v. Pradera SFR, LLC et al.*, C.A. No. 5:21-cv-673-XR ("KFA Lawsuit").[1]

Pradera SFR was dragged into the KFA Lawsuit because of AHV's conduct as Development Manager. More specifically, AHV acted with gross negligence both in failing to comply with federal copyright law and in failing to apprise Pradera SFR of KFA's copyrighted interests in various promotional materials. This in turn resulted in alleged infringement of KFA's

---

[1] A true and correct copy of Plaintiff's First Amended Complaint in the KFA Lawsuit, Dkt. 60 ("KFA Complaint") is attached hereto as Exhibit A and incorporated herein for all purposes.

copyrights by both AHV and Pradera SFR in their advertisements and promotional materials designed to attract customers (e.g., renters) and financial supporters (e.g., lenders and investors) of the Pradera Project. This infringing advertising and promotion of the Pradera Project and the products and services offered there consisted of discrete events extending over a period of several years and reaching both the general public and specific targeted market segments. In addition, AHV's conduct caused the homes in the Pradera Project to be built using architectural and construction plans that were allegedly infringing, unauthorized derivative works. Renderings, drawings, and elevations of these homes were also used in advertising and promotion of the Pradera Project to customers (e.g., renters) and financial supporters (e.g., lenders and investors).

The resulting KFA Lawsuit—in which KFA sought over $70 million in damages—was brought in July 2021 against Pradera SFR, AHV, and KTGY Group, Inc ("KTGY"). Pradera SFR defended itself, litigated, and settled the KFA Lawsuit at great cost. Under the Development Agreement, AHV must now indemnify Pradera SFR for the legal expenses, costs, and expert fees Pradera SFR incurred defending itself against KFA's claims and resolving those claims.

## THE PARTIES

1.      Plaintiff Pradera SFR is a Delaware Limited Liability Company that is qualified to do business in Texas. Pradera SFR's sole member is Bristol Pradera, LLC, which is wholly owned by Bristol Value II, L.P., which is managed by San Francisco, California based Bristol Group, Inc.

2.      Defendant AHV is a Delaware Limited Liability Company that is qualified to do business in Texas. Its principal place of business is 19707 IH-10 West, Ste 305 San Antonio, TX 78257. Service of process may be had upon its registered agent, Capitol Corporate Services, Inc., 206 E.9th Street, Suite 1300, Austin, Texas 78701-4411.

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over this matter pursuant to *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375 (1994). When the parties settled and this Court dismissed *Kipp Flores Architects, LLC v. Pradera SFR, LLC et al.*, the Court "retain[ed] jurisdiction over the parties and the case for the purposes of enforcing the settlement agreements between the parties." C.A. No. 5:21-cv-00673-XR, Order Dismissing Case with Prejudice at 1, ECF No. 230. AHV's indemnity obligation to Pradera SFR was expressly retained in the AHV/Pradera Settlement Agreement ("Settlement Agreement") resolving other potential cross-claims between AHV and Pradera. This case seeks to enforce that obligation in the Settlement Agreement, and the Court thus retains jurisdiction. The Court also has jurisdiction under 28 U.S.C. §1331 because resolution of Plaintiff's claims involves issues arising under federal copyright law.

4.     Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district. Moreover, the Parties to the Settlement Agreement selected this forum for resolution of their disputes.

## GENERAL FACTUAL BACKGROUND

### A.     The Pradera Project and AHV's Role

5.     AHV is a real estate developer. According to its website, AHV develops, builds and operates "luxury, single-family and attached-home rentals." In January 2017, AHV contacted Bristol Group, Inc. ("Bristol"), a real estate investment and development company, about an opportunity to develop a community of 250 detached single-family rental (SFR) homes in the Culebra Corridor in San Antonio, Texas. This Project became known as "Pradera" ("Pradera Project").

6.     The Pradera Project was to be a professionally managed and maintained master planned and gated community where residents could live in larger, detached residences with 2-car

garages and front and back yards without having to purchase their homes, and simultaneously have access to resort-style amenities including a fitness center and pool. The Pradera Project would include an amenity center, green space, and a dog park and was to feature a mixture of three types of homes: (1) a single-story, 3 Bed, 2 Bath unit ("Azalea"); (2) a two-story, 3 Bed, 2.5 Bath unit ("Bluebonnet"); and (3) a two-story, 4 Bed, 2.5 Bath unit ("Cypress").

7.      In 2016, AHV was planning to develop the Culebra property with an affiliate of Rialto Capital, but that relationship ended and in 2017 Bristol stepped in. On March 20, 2017, Bristol Pradera, LLC and AHV affiliate AHV Pradera Partners, LLC formed Pradera SFR, LLC to jointly develop the Pradera Project. The parties subsequently signed the Limited Liability Company Agreement for Pradera SFR, LLC on April 13, 2017. Bristol Pradera, LLC received a 97% membership interest in Pradera SFR and AHV Pradera Partners, LLC obtained a 3% interest.[2]

8.      On April 13, 2017, Pradera SFR and AHV entered into a "Development Agreement" whereby Pradera SFR retained AHV as "Development Manager" to develop, design, and construct the Project. AHV's responsibilities included managing the design of the development, finalizing plans, negotiating agreements for Pradera SFR, and implementing a marketing plan for the project. The Development Agreement is governed by the law where the project is located – here, Texas.

9.      In the Development Agreement, AHV agreed that the "standard of performance under the Agreement shall be that of a sophisticated and experienced project development and construction manager with respect to first-class, high quality projects comparable to the Project in the San Antonio, Texas area." Dev. Agr. 3.1. Among other things, AHV was responsible for recommending, arranging, managing, and coordinating with the architect for the Project.

---

[2] Pursuant to the Settlement Agreement between Pradera SFR and AHV, Bristol Pradera LLC eventually became the sole member of Pradera SFR.

10.     AHV further agreed "to exercise good faith and to act in the best interests of the Project and [Pradera SFR]," obligations AHV also had under the common law given the special nature of AHV's relationship with Pradera SFR. *Id.*

**B.      The Pradera Project Floorplans and Marketing Materials**

      **1.      "Off the Shelf" Plans and AHV's Prior Relationship With KFA**

11.     From the outset, AHV advised Bristol that it planned to use "off the shelf" floorplans for the homes at the Pradera Project. This was a significant component of AHV's proposal to Bristol as a potential investor, because AHV claimed that the use of "off the shelf" plans it had used in previous projects would significantly reduce the time and cost otherwise associated with the architectural component of the Project.

12.     AHV had worked with KFA previously in and around Austin, Texas.

13.     Before Pradera SFR's creation or involvement in the development, AHV had contacted Kipp Flores Architects ("KFA") about potentially creating architectural plans for the planned amenity center and homes at the Project.

14.     As early as 2016 or before, AHV possessed copies of KFA house floorplans both because of its prior work with KFA and because it anticipated contracting with KFA to design the homes at Culebra.

      **2.      The AGS Graphics and BluEnt Marketing Materials**

15.     AHV began planning and promoting what would become the Pradera Project to potential investors well before Bristol became involved.

16.     Through investigation and discovery prompted by the KFA Lawsuit, Pradera SFR came to learn that in 2016—well before Bristol's involvement with the Project began—AHV had retained AGS Graphics and BluEnt to convert KFA's architectural plans into drawings, renderings, and elevations to be used in marketing the Project (and potentially other AHV projects).

17.     AHV used the AGS Graphics and BluEnt documents in its marketing and advertising materials for the Project, including on the Project website. AHV also placed the AGS Graphics and BluEnt documents in what AHV called a "Product Library." *See, e.g.*, KFA Complaint at ¶¶ 41-63, 69-142, 184-86.

18.     KFA entered into a limited use agreement with AGS Graphics and BluEnt setting forth the terms under which they could generate AHV's marketing materials from KFA's plans. In addition, AHV was obligated to comply with its Licensing Agreement with KFA in using the AGS Graphics and BluEnt materials for marketing and advertising. *See, e.g.*, KFA Complaint at ¶¶ 41-63, 69-142.

19.     As Pradera SFR learned while litigating the Lawsuit, these agreements expressly required that KFA's name and Copyright Management Information be displayed on all drawings, renderings, and elevations AGS Graphics and BluEnt created. *Id.* But the versions of the AGS Graphics and BluEnt documents provided to Pradera SFR and used to market the Pradera Project contained no references to KFA and no Copyright Management Information. *Id.* Accordingly, KFA ultimately alleged in the KFA Lawsuit that the use of unmarked versions of these documents in marketing, advertising, and promoting the Pradera Project was unauthorized and infringed KFA's copyrights.

**C.     AHV Shares KFA Floorplans and AGS Graphics/BluEnt Marketing Materials with Pradera SFR**

20.     AHV presented KFA's floorplans to Pradera SFR on or about April 13, 2017. At the same time AHV provided Pradera SFR marketing materials branded with AHV's name and logo, including the "Product Library." From the KFA Lawsuit, Pradera SFR came to learn the AGS Graphics and BluEnt drawings, renderings, and elevations prepared from KFA's plans were included in these marketing materials. With no reference to KFA on the AHV marketing materials provided, Pradera SFR believed them to be AHV's documents.

21.     AHV and Pradera SFR subsequently used the AHV Product Library materials (including the AGS Graphics and BluEnt drawings, renderings, and elevations) in promotional materials broadcast or published to both the general public and specific market segments for the purpose of attracting customers (e.g., renters) and financial supporters (e.g., lenders and investors) and creating visibility for the Pradera Project.

22.     Only after KFA filed the KFA Lawsuit did Pradera SFR learn that the marketing materials AHV had provided it allegedly infringed KFA's copyrights.

**D.     Pradera SFR and KFA Fail to Agree on Terms for Pradera Project Home Floorplans**

23.     In late summer 2017, Pradera SFR and KFA reached an agreement regarding architectural plans for the Pradera Project's amenity center.

24.     Pradera SFR and KFA were unable to reach an agreement, however, regarding the Pradera Project home plans. Specifically, Pradera SFR knew it would make multiple changes to the "off the shelf" KFA plans AHV presented to ensure the plans met Pradera SFR's standards and to tailor the plans to the preferences of the San Antonio market. Accordingly, Pradera SFR insisted on two industry-standard requirements in any agreement with KFA: (1) that Pradera SFR own the tailored architectural plans created for the Pradera Project; and (2) that Pradera SFR be indemnified by the architect for any damages resulting from plan defects.

25.     KFA would not meet Pradera SFR's requirements, so another architect needed to be identified. Ultimately AHV, acting in its role as Development Manager, recommended retaining another architect it was familiar with to design the Pradera Project homes. AHV ultimately advised KFA that it would be using another architect on the Project.

**E.     AHV Retains KTGY to Produce Final Plans and Pradera Project is Constructed**

26.     AHV subsequently identified and Pradera SFR retained the California-based architectural firm KTGY. In Q4 2017 KTGY became the Project Architect. KTGY produced

the specific plans that were used for the design and construction of all the homes within the Pradera Project.

27.     KTGY provided its first architectural sketches in October and November 2017 and completed the final construction drawings for the Pradera Project homes in early 2018. Construction began in mid-2018 and the homes in Pradera were completed in 2020.

28.     At all times before KFA filed its lawsuit in 2021, Pradera SFR understood i) that the marketing materials AHV had shared with Pradera SFR were materials AHV had legal authority to use and distribute and ii) that KTGY would be independently developing the Pradera home plans based on its own experience and past work.

**F.    Acting on AHV's Instructions, KTGY Uses KFA's Plans**

29.     Unknown to Pradera SFR until after the KFA Lawsuit was filed and extensive discovery had been conducted, AHV provided the KFA plans to KTGY in connection with KTGY's design of the homes at Pradera. This cast doubt on whether KTGY had in fact acted independently in designing the Pradera Project home plans as Pradera SFR had been led to believe.

30.     As KFA alleged and discovery revealed, AHV actually gave KTGY the KFA copyrighted plans – plans that it had no authority to distribute –and encouraged KTGY to make "proposed refinements" to the KFA plans for the Pradera Project. *See, e.g.,* KFA Complaint ¶ 922.

31.     KFA asserted that from time to time throughout the KTGY design process, AHV directed KTGY to follow the KFA plans previously sent. As KFA alleged in the lawsuit, "AHV directed KTGY to redraw KFA Plan 1529 with the 'refinements' suggested by Mr. Texter [KTGY] to create the 'Bluebonnet' [home] design." KFA Complaint at ¶ 930. KFA alleged that KTGY generated the construction drawings for each of the "Bluebonnet" houses at Pradera from KFA's plans.

32.     The Bluebonnet plans, which were allegedly unauthorized derivatives, if not copies of KFA's copyrighted works, were some of the subject plans accused of infringement in the KFA Lawsuit. Other KFA plans allegedly used in violation of KFA's copyrights were Plans 1484 and 1904 for the Azalea and Cypress home designs in Pradera.[3]

**G.     AHV Reassures Pradera SFR that Plans are Noninfringing During Development Phase**

33.     In July 2018, KFA notified AHV that the Pradera plans infringed KFA's copyright. AHV advised Pradera SFR of this, simultaneously reassuring Pradera SFR that KFA's assertion was misguided and the KTGY plans were different and developed independently. Pradera SFR learned through discovery that Mark Wolf, CEO of AHV subsequently responded to KFA in writing disputing KFA's claim, stating that the plans were different. Nothing further came of this until three years later when KFA filed the Lawsuit.

34.     By the time the KFA Lawsuit was filed in 2021 and the allegations of copyright infringement came to light, the houses at Pradera had already been built and rented out to tenants.

**H.     The KFA Lawsuit**

35.     In its lawsuit, KFA accused AHV, Pradera SFR, and KTGY of direct and indirect infringement of KFA's copyrighted works based on two theories:[4]

(1) the Defendants infringed various KFA Plans by including renderings and stylized images of those plans in internal communications, materials provided to investors and lenders, and other "promotional," advertising, and marketing materials ("Distribution Copyright Infringement Claim"); and

---

[3] Ultimately, the only as-built homes KFA focused on in the KFA Lawsuit were those built pursuant to the Bluebonnet plan.

[4] On Pradera SFR's motion, this Court dismissed a third theory of liability based on alleged violations of the Digital Millennium Copyright Act. Dkt. 102

(2) the Defendants infringed KFA Plan 1529 by constructing and renting homes in and after 2018 built using an allegedly unauthorized derivative of that plan. Renderings, drawings, and images of the Bluebonnet homes were distributed through marketing and advertising materials in print and online ("Bluebonnet Copyright Infringement Claim").

*See, e.g.,* KFA Complaint at ¶¶ 874, 878-81, 932-41, 953-93.

36.     KFA sought as damages disgorgement of approximately $70MM in allegedly improper profits it claimed Pradera SFR and other Defendants earned as a result of their copyright infringement. KFA also sought injunctive and other relief.

37.     Under the terms of the Development Agreement, AHV received total compensation of close to $1 million in connection with its role as Development Manager. And KGTY received far less for its services.

38.     As a result, only Pradera SFR—the least culpable KFA Lawsuit defendant by far—faced significant disgorged profits exposure as the Owner of the Pradera Project.

39.     The parties vigorously prosecuted and defended the KFA Lawsuit. The case involved significant party and third-party discovery, including substantial written discovery, extensive document production, and approximately 20 depositions. In addition, the docket sheet reveals 230 numbered entries, including numerous "motion" entries, many of which were opposed. Among other things, the parties fully briefed and litigated two motions to dismiss and four motions for summary judgment, and participated in nine oral hearings before the Court. All told, the parties litigated for 2 years and 9 months before successfully mediating the case on their second try, shortly before trial but after all pre-trial materials had been prepared, filed, and exchanged.

40.     Pradera SFR was required to engage counsel to litigate the case and was also forced to retain qualified experts in copyright and damages, including a survey expert. In total, Pradera SFR was required to spend approximately $3,000,000 in legal fees, costs, expenses, and

expert fees in defense and resolution of the KFA Lawsuit – a lawsuit caused by AHV's serial gross negligence.

41.     Indeed, even AHV's counsel admitted in open court on November 23, 2021 that:

And Mr. Bonham is correct, AHV, American Housing Ventures, their principals were not up to speed on copyright law. And they did hand plans to individuals who they shouldn't have done.

Tr. of Motion to Compel Hrg. (November 23, 2021) at 14.

42.     There are myriad concrete examples of AHV's breach of duty and gross negligence, many of which are described in further detail below. But this admission from AHV's counsel lay at the heart of KFA's infringement claims and it also forms the core of Pradera SFR's indemnification claim. AHV failed to educate itself properly on its obligations under federal copyright law, and as a direct result, AHV and Pradera SFR improperly used KFA's copyrighted materials in their advertising, thus exposing Pradera SFR both to massive potential legal exposure and to the significant direct costs it incurred in defending and settling KFA's lawsuit. Pradera SFR now seeks recovery of those direct costs in this action.

**I.     AHV Owes Pradera SFR Common Law and Contractual Duties as Pradera SFR's Agent**

43.     At all relevant times, AHV has owed duties to Pradera SFR. First, the Development Agreement establishing the relationship between the parties contains multiple provisions delineating responsibilities that make AHV Pradera SFR's agent in connection with the development of the Pradera Project generally and the management of the architectural aspects of the Pradera Project specifically. *See, e.g.,* Dev. Agr. 2.1, 3.1.

44.     AHV specifically acknowledged that it would "further the interests of Owner with respect to the Project by furnishing Development Manager's *skill, experience, and judgment in the performance of the Services.*" Dev. Agr. 2.2. (emphasis added). Moreover, AHV agreed that it was

acting on Pradera SFR's behalf, expressly acknowledging that it "shall implement or cause to be implemented the decisions of the Owner" as to the Pradera Project. *Id.*

45.     Under Texas common law, these express undertakings and others like them in the Development Agreement establish a special relationship between AHV and Pradera SFR that obligates AHV to act in good faith toward Pradera SFR in connection with all of its obligations under the Development Agreement.

46.     In addition, AHV also assumed a *contractual* good faith obligation to Pradera SFR, agreeing "to exercise good faith and to act in the best interests of the Project and Owner throughout the term of this Agreement." Dev. Agr. 3.1. AHV's repeated misconduct constituted breach of those duties and exposed Pradera SFR to significant liability, risk, and damages.

**J.      AHV's Indemnification Obligations Under the Development Agreement and Settlement Agreement**

47.     Section 8.1 of the Development Agreement sets forth AHV's indemnification obligations to Pradera SFR and expressly obligates AHV to indemnify and hold Pradera SFR harmless from harms arising directly or indirectly from AHV's gross negligence. Specifically, Section 8.1 states in relevant part:

> Development Manager shall indemnify and defend Owner, and its affiliates, trustees, partners, directors, officers, shareholders, members, managers, agents and employees, against, and hold Owner and such other entities and persons harmless *from any and all losses, costs, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, arising directly or indirectly out of* (i) any default by Development Manager under the provisions of this Agreement or (ii) any gross negligence or willful misconduct of Development Manager or any of its officers, partners, directors, shareholders, members, managers, agents or employees, in connection with this Agreement or Development Manager's Services or work hereunder, whether within or beyond the scope of its duties or authority hereunder.

Dev. Agr. 8.1 (emphasis added).

48.     As detailed further below, AHV's witnesses admitted under oath in the KFA Lawsuit that AHV was ignorant of federal copyright law when it engaged in the conduct KFA

challenged; those same witnesses testified under oath that AHV did not act with the knowledge that its acts would violate the rights of others and cause those parties harm.

49.     Although Pradera SFR, AHV, and certain related individuals and Bristol and AHV entities have settled most of their derivative disputes arising out of the KFA Lawsuit, the Settlement Agreement to which both Plaintiff and Defendant are parties expressly excludes from the settlement and reserves Pradera SFR's right to bring this indemnification action.

**K.     Pradera SFR's Indemnifiable Damages**

50.     Accordingly, Pradera SFR seeks indemnification from AHV under Article 8.1 of the Development Agreement.

51.     Specifically, Pradera SFR seeks indemnification from AHV for the legal fees, expenses, and costs, including expert fees Pradera SFR has itself directly paid to litigate and resolve the KFA Lawsuit. All told, Pradera SFR has incurred and paid approximately $3,000,000 in unreimbursed attorneys' fees, expenses, and costs, including expert fees in defending and resolving the claims in the KFA Lawsuit. Plaintiff Pradera SFR thus seeks indemnification from AHV to recover these amounts.

52.     Pursuant to Article 8.1 of the Development Agreement, Plaintiff Pradera SFR also seeks its reasonable attorneys' fees and costs associated with litigating this indemnification suit.

<u>**SPECIFIC FACTS DEMONSTRATING**</u>
<u>**AHV'S BREACH OF DUTY AND GROSS NEGLIGENCE**</u>

53.     Pradera SFR incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

**A.     AHV Was Aware of the Risks**

54.     AHV's counsel admitted in open court that AHV failed to get "up to speed" on copyright law.

55.     Indeed, the evidence amply demonstrates that AHV was aware that it did not have the right to use or distribute KFA's copyrighted material without KFA's agreement or permission. The following paragraphs offer a non-exhaustive list of facts taken largely from the First Amended Complaint in the KFA Lawsuit demonstrating that AHV had actual subjective awareness of the risks to which its conduct exposed Pradera SFR.

56.     For example, in 2016 before beginning work on the Pradera Project, AHV had entered into an express copyright license agreement with KFA that allowed AHV to use certain KFA plans in AHV's Austin area developments (2016 License Agreement). KFA Complaint ¶¶ 23-40. As alleged in the KFA Lawsuit, that Agreement specifically limited AHV's use of the KFA Plans to developments within a 50-mile radius of Austin, Texas. *Id.* It also provided that AHV had no right to otherwise use KFA's drawings or architectural works without KFA's written permission and specified the type of identification and copyright management information that was required on any publication of KFA's copyrighted works. *Id.*

57.      Moreover, before Pradera SFR was created, AHV engaged AGS Graphics and BluEnt to create drawings, renderings, and elevations based on KFA's plans for AHV's use in marketing materials for various AHV projects. *See, e.g.,* KFA Complaint ¶¶ 41-189. These arrangements were subject to AHV's 2016 License Agreement with KFA as well as a limited use authorization provided by KFA to AGS Graphics. *Id.*

58.     AHV also possessed plans and drawings from its prior work with KFA on which KFA's copyright notices and copyright management information were prominently displayed. *E.g.,* KFA Complaint at ¶¶ 34-37.

59.     In addition, as early as March 2017, AHV was aware that it would need to obtain new agreements from KFA if they wanted to use existing KFA plans for the Pradera Project homes since they were outside the 50 mile radius from Austin.

60.     The parties attempted to negotiate agreements with KFA for home plans for Pradera as well as plans for an amenity center. Ultimately, a plan for an amenity center was created and licensed, but an agreement with regard to the home plans was not.

61.     Negotiations with KFA finally broke down regarding the use of KFA's house plans for the Pradera Project by November 2017 at the latest, and AHV contacted KTGY Group, Inc. ("KTGY") to discuss its acting as the Project Architect on the Project. KFA Complaint ¶¶ 218-23. Unbeknownst to Pradera SFR until discovery in the KFA Lawsuit, on October 3, 2017, AHV sent the three KFA house plans for the Pradera Project to KTGY. This distribution of KFA's plans and construction drawings without permission was unauthorized. KFA Complaint ¶¶ 242-47; 940-47.

62.     Discovery also revealed that shortly after AHV improperly transmitted the three KFA floorplans to KTGY, KFA reminded their clients in writing, including AHV, of their copyright obligations, warning them that failure to follow those obligations would violate federal copyright law. Thereafter, AHV continued to work with KTGY using the copyrighted KFA documents including house construction drawings. *See, e.g.,* KFA Complaint ¶¶ 244-47.

63.     Indeed, AHV CEO Mark Wolf effectively admitted in his deposition that AHV knew about its copyright obligations, acknowledging that he knew AHV should not have sent the plans to KTGY, but justifying AHV's decision to do so because he believed it was a "no harm no foul" situation because AHV did not tell KTGY to "copy" the plans. Specifically, he testified:

> Q. But at least you're saying: With respect to plans being sent to KTGY, that shouldn't have been done?
>
> A. Correct.
>
> Q. All right.
>
> A. Again, no harm, no foul. It wasn't intentional. We were told -- told no one to copy anything. It was a reference point, how they built the houses previously.

Wolf Depo. Tr.: 16- 21.

**B.      Viewed Objectively, AHV's Conduct Exposed Pradera SFR to Extraordinary Risk**

64.      AHV's conduct (creating AHV's obligation to indemnify Pradera SFR) extended from at least 2017 through 2021. In broadest terms, the breach of duty and grossly negligent conduct giving rise to Pradera SFR's legal exposure and thus to the KFA Lawsuit can be divided into two categories as delineated in the complaint in the KFA Lawsuit: (1) Conduct giving rise to KFA's "Distribution Copyright Infringement Claim;" and (2) Conduct giving rise to KFA's "Bluebonnet Copyright Infringement Claim."

**1.      Distribution Copyright Infringement Claim**

65.      From the inception of the Pradera Project, AHV both published and caused to be published materials that infringed on KFA's copyrights by improperly using both KFA's own copyrighted material and KFA-derivative works to attract customers (e.g., renters) and financial supporters (e.g., lenders and investors) for the Pradera Project. Beginning in 2017, this conduct exposed Pradera SFR to extraordinary legal risk.

66.      AHV's direct license for the KFA house plans from its previous work with KFA extended only to developments within a 50-mile radius of Austin, Texas, such that any use of those plans to promote or advertise the Pradera Project—which is over 65 miles from the Austin city limits and almost 80 miles from downtown Austin—would violate KFA's copyrights.

67.      In addition, when AHV engaged AGS Graphics and BluEnt in 2016 to create marketing materials AHV would ultimately use to promote and advertise the Pradera Project (including drawings, renderings, and elevations), it directed its contractors to produce these materials directly from KFA's house plans. To effectuate this, KFA provided a limited use authorization to both companies. Thereafter KFA provided the CAD files for these materials with KFA's copyright management information on it.

68.     AHV had actual and/or constructive knowledge of the AGS Graphics and BluEnt licenses, which expressly required that all work product be marked with KFA's copyright management information. AHV's use of the BluEnt and AGS Graphics materials were in turn governed by the 2016 AHV License Agreement, which contained similar requirements. Neither AGS Graphics nor BluEnt nor AHV ever marked *any* of the KFA-derived marketing materials with KFA's copyright information; indeed, AHV placed those marketing materials into its "Product Library" labeled in such a way that they appeared to belong solely to AHV. KFA Complaint ¶¶ 41-63; 69-183;184-85.

69.     KFA alleged that AHV improperly used the AGS Graphics and BlueEnt derivative materials in promotional materials, including financing memoranda, and presentations through at least 2018. These materials were used to attract supporters of the Pradera Project and were distributed to various parties. As the owner of the Pradera Project, this conduct exposed Pradera SFR to vicarious liability for AHV's copyright infringement.

70.     Worse, AHV created marketing packages for Pradera and transmitted the infringing materials to Pradera SFR through those means as well as when it gave Pradera SFR access to the AHV Product Library in March 2017. With no knowledge that any of the materials in the marketing packages or in the Product Library infringed on any third party's copyrights, Pradera SFR in turn used infringing Product Library materials to attract customers (e.g., renters) and financial supporters (e.g., lenders and investors) of the Pradera Project through 2021. *See, e.g.*, KFA Complaint at 407-813. Thus, Pradera SFR was doubly exposed to massive risk, first through AHV's own use of infringing materials for which Pradera SFR faced vicarious liability, and second through Pradera SFR's unknowing use of infringing materials provided to it by AHV.

71.     The First Amended Complaint in the KFA Lawsuit contains images of these AGS Graphics and BluEnt renderings, drawings, and elevations and demonstrates that none of them

contain a reference to KFA or any of its copyright management information as required. Accordingly, use and distribution of AGS Graphic's and BluEnt's work was unauthorized and infringing.

72.     The conduct giving rise to KFA's Distribution Copyright Infringement Claim—and thus to Plaintiff's indemnification claim—continued at least until the KFA Lawsuit was filed.

**2.     Bluebonnet Copyright Infringement Claim**

73.     KFA's Bluebonnet Copyright Infringement Claim arose out of marketing materials and advertisements AHV and Pradera SFR created and published using the Bluebonnet and other house plans ostensibly generated by KTGY. In reality, as Pradera SFR came to learn and as alleged in the KFA Lawsuit, the KTGY plans were allegedly derivative of and infringing upon KFA's copyrighted home designs.

74.     As alleged and discovery revealed, to create the Pradera Project home plans, AHV provided the copyrighted KFA plans to KTGY.

75.     Not only did AHV send the plans to KTGY and refer KTGY to the plans without authorization, KFA alleged, but discovery revealed that AHV personnel also referred to the KFA plans while overseeing KGTY's development of plans for Pradera, directing KTGY to refer to them.

76.     Worse, AHV improperly transmitted the KFA plans to KTGY even though only weeks before KFA had refused to grant AHV and Pradera SFR permission to use the same copyrighted plans for the Pradera Project because the parties could not agree on plan ownership or indemnification obligations. Specifically, as alleged in the First Amended Complaint, on October 3, 2017, AHV sent literal copies of all three KFA works in suit to KTGY. AHV admits that it should not have sent them to KTGY for use at Pradera. *See, e.g.*, KFA Complaint ¶¶ 242-47; ¶64 above.

77.     As KFA alleged, the design of the Bluebonnet architectural work, both in the design plans and as it appeared in other iterations (*e.g.*, construction drawings, marketing materials, and

constructed houses) was allegedly an unauthorized derivative work of the copyrighted KFA Plan 1529, including the overall look and feel of the works and the selection and arrangement of the constituent parts of the works, and was substantially similar to the copyrighted KFA Plan 1529. The Bluebonnet plan was allegedly infringing. *See, e.g.* KFA Complaint ¶ 940. KTGY also generated the construction drawings for each of the Bluebonnet houses at Pradera. *Id.* ¶ 926. Relying on these plans and drawings, allegedly derived from KFA Plan 1529, AHV constructed, and/or caused to be constructed, 138 Bluebonnet houses at Pradera. The Bluebonnet houses themselves became infringing marketing and advertising instruments, as KFA alleged.[5] *See, e.g.,* KFA Complaint ¶ 926, 931, 932-40.

78.     KFA alleged that AHV also generated, or caused to be generated, marketing and promotional materials containing representations of Bluebonnet houses at Pradera. These materials were distributed on the internet and were used on the website as well as in hard copy promotional and advertising materials for the Pradera Project. *See, e.g.*, KFA Complaint ¶ 932.

79.     Pradera SFR's use of the Bluebonnet design, as well as its distribution and marketing of the other unauthorized materials belonging to KFA, occurred only because Pradera SFR reasonably relied on AHV to act reasonably and professionally and to honor the duties imposed on it by both the common law and the Development Agreement.

**3.     Conduct Under Both of KFA's Liability Theories Spanned Years**

80.     The events recounted above were not isolated incidents, but rather separate acts of infringement occurring over a long period of time. According to KFA's First Amended Complaint, AHV committed dozens of violations of federal copyright law stretching across several years, as

---

[5] The same is true for at least two other designs used in the Pradera Project; however, issues regarding KFA's copyright registration for the other designs prompted KFA to construct the KTGY-related portion of its damages model around the KFA Lawsuit Defendants' improper use of only the Bluebonnet plan in their advertising.

it unlawfully used and distributed the KFA copyrighted works or unauthorized copies or derivatives thereof for advertising and promotion on separate occasions in 2016 and in 2017, 2018, 2019, 2020, and 2021. For example:

- 2016 – AHV first placed AGS Graphics and BluEnt unauthorized derivatives and copies of KFA's plans on the Project website, in marketing materials, and in its Product Library. *See, e.g*., KFA Complaint at ¶¶ 41- 142, 154-79, 184-86.

- 2017 – Financial Presentations and Memoranda were prepared and distributed by AHV or AHV and Pradera SFR without KFA Copyright Management Information. *See, e.g*., KFA Complaint at ¶¶ 549, 569, 589, 603, 623, 704.

- March 4, 2017 – AHV distributed a document containing KFA building elevation renderings titled "01-31-17 Exterior Packages Presentation" to various parties via email. KFA Complaint at ¶ 328-30.

- April 13, 2017 – AHV provided Pradera SFR marketing materials branded with AHV's name and logo including the Product Library that KFA later alleged were unauthorized and infringing derivative works or copies of KFA plans that had been provided to AGS Graphics and BluEnt under limited use agreements and pursuant to the terms of the 2016 License Agreement between AHV and KFA, which applied to both AGS Graphics and BluEnt materials. *See, e.g.*, KFA Complaint ¶¶ 45-79; 874; 184-86; 231-412; 877.

- July 17, 2017 – AHV and Pradera SFR created a document titled "Confidential Financing Memorandum" that contained KFA building elevation renderings and floorplan drawings, which was distributed to various parties promoting the Project. *See, e.g.*, KFA Complaint at ¶¶ 603, 605 (redistributed in 2019).

- October 3, 2017 – AHV provided the KFA copyrighted plans including Plans 1529, 1484, and 1904 to KTGY, the new Project Architect for the Pradera Project with direction. *See* KFA Complaint ¶¶ 940-47.

- October 2017 – AHV created a document titled "Pradera Financing Presentation – V7 – 10.18 Update" which contained KFA building elevation renderings and floorplan

drawings. AHV distributed it via email to various parties for information and promotion. KFA Complaint ¶¶ 765-66.

- October-November 2017 – KTGY and AHV worked together to develop the Pradera house plans and sketches and drawings were created.

- Early 2018 – KTGY produced construction plans for the Bluebonnet design home at Pradera. KFA Complaint ¶ 923.

- February 6, 2018 – AHV distributed an email with a document (created in December 2017) titled "12-07-17 Exterior Packages Presentation" that contained KFA building elevation renderings for use in promoting and marketing the Project. *See*, *e.g.*, KFA Complaint at 380-82.

- 2018 – Financial Presentations and Memoranda were prepared and distributed by AHV or AHV and Pradera SFR without KFA Copyright Management Information. *See, e.g.*, KFA Complaint at ¶¶ 643, 675,765, 781, 797, 813, 623.

- Mid 2018-2020 – AHV caused to be constructed 138 homes within the Pradera Project based on the Bluebonnet Plan, which was allegedly an unlawful derivative work from KFA Plan 1529 that infringed KFA's copyright. The homes themselves are alleged to be instruments of advertising for Pradera, and have been used in the course of advertising activities for Pradera. *See, e.g.*, KFA Complaint at 936-39.

- 2019 – Financial Presentations and Memoranda were prepared and distributed by AHV or AHV and Pradera SFR without KFA Copyright Management Information. *See, e.g.*, KFA Complaint at ¶¶ 723, 738, 675. April 2019 — AHV created a document titled "Pradera Financial Memorandum – April 2019," which contained KFA floorplan drawings and building elevation renderings. This was sent by email to various parties on both April 8, 2019 and June 1, 2021. *Id.* at 738, 740.

- August 2019 – AHV and Pradera SFR created a document titled "Pradera Project Update Presentation" which contained KFA building elevation renderings and floorplan drawings. AHV distributed that document to various parties. *Id.* at 752, 754.

- 2020 – AHV completed the 138 Bluebonnet homes within the Pradera Project using the allegedly infringing plans and marketed and advertised the homes built with the infringing plans on the website, in brochures, and through the homes themselves.

- February 2020 – Relying on KFA-copyrighted materials improperly provided by AHV, Bristol and Pradera SFR created a document entitled "2020-02 Pradera Presentation" that contained KFA floorplan drawings and building elevation renderings which they distributed to various parties for marketing, advertising, and promotion. *Id.* at 512-20.

- 2021 – Marketing, advertising, and promotion of Pradera continued primarily using the KTGY plans and renderings and elevations thereof through the website, brochures, advertising, and the homes themselves, all of which KFA alleged infringed its copyrighted works.

- May 3, 2021 – Document entitled "Pradera Financing Memo – Feb 2019" and created by AHV and Pradera SFR containing KFA floorplan drawings and building elevation renderings distributed. *Id.* at 723-37.

- May 15, 2021 – Document entitled "Pradera Financing Memo – April 2019" and created by AHV and Pradera SFR containing KFA floorplan drawings and building elevation renderings distributed. *Id.* at 738-51.

- June 1, 2021 – Document entitled "Pradera Financing Memo – April 2019" and created by AHV and Pradera SFR containing KFA floorplan drawings and building elevation renderings distributed. *Id.* at 738-51.

## CAUSE OF ACTION
## INDEMNIFICATION FOR BREACH OF DUTY AND GROSS NEGLIGENCE

81.     Pradera SFR incorporates by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

82.     The factual allegations above demonstrate that AHV repeatedly engaged in conduct which, viewed objectively from AHV's standpoint, involved an extreme degree of risk to Pradera SFR by exposing Pradera SFR to a high probability that it would be subjected to significant copyright infringement liability to KFA.

83.     At a categorical level, AHV's serial breaches of duty and gross negligence in the performance of its duties to Pradera SFR included:

      a.    Failing to inform Pradera SFR of material and relevant facts regarding the limited scope of AHV's rights to use the KFA-derived materials that were the subject of the KFA Lawsuit;

      b.    Unlawfully distributing KFA plans to KTGY;

      c.    Unlawfully directing KTGY to follow or mimic KFA's copyrighted plans and features thereof;

      d.    Unlawfully making or causing to be made unauthorized derivative works from KFA's copyrighted plans;

      e.    Unlawfully creating marketing and advertising materials from KFA's copyrighted plans;

      f.    Unlawfully distributing marketing and advertising materials made from KFA's copyrighted plans;

      g.    Unlawfully distributing KFA plans to numerous parties; and

      h.    Otherwise unlawfully using and distributing the KFA copyrighted works.

84.     The factual allegations above also demonstrate that AHV knew of the risk involved with its handling of KFA's home plans, including but not limited to: (1) AHV's execution of signed agreements identifying KFA's plans as being protected by copyright, (2) AHV's use of the AGS Graphics and BluEnt materials based on KFA plans as marketing drawings, renderings, and elevations without "KFA" or its Copyright Management Information on them; and (3) AHV's receipt of communications from KFA beginning no later than 2017 in which KFA reminded AHV of KFA's copyrights in both general and specific terms.

85.     Despite AHV's knowledge of the risks associated with infringing KFA's copyrights, AHV not only ignored those risks itself in its own advertising and promotional activities on Pradera SFR's behalf, but also induced Pradera SFR to unknowingly infringe KFA's copyrights by providing materials with no copyright management information on them or branded with only AHV's name suggesting that AHV owned appropriate rights to the marketing materials

Pradera SFR used in its own advertising and promotional activities. AHV thus proceeded with conscious indifference to the rights and welfare of, at minimum, both KFA and Pradera SFR.

86.     Accordingly, AHV engaged in discrete acts independently constituting gross negligence under Texas law in, at minimum, the years 2017, 2018, 2019, 2020, and 2021.

87.     Pradera SFR is therefore entitled to indemnification from AHV under Article 8.1 of the Development Agreement.

## CONDITIONS PRECEDENT

88.      Plaintiff alleges that all conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## PRAYER FOR RELIEF

WHEREFORE, Pradera SFR prays that American Housing Ventures, LLC be cited to appear and answer herein and that upon final trial judgment be entered against AHV and in Pradera SFR's favor as follows:

A.     Awarding Pradera SFR indemnity from AHV;

B.     Awarding Pradera SFR compensatory damages as reimbursement for the attorneys' fees, expenses, and costs, including expert fees that Pradera SFR paid to defend and resolve the KFA Lawsuit;

C.     Awarding Pradera SFR its attorneys' fees, costs, and other expenses incurred in bringing the instant action as expressly permitted by Article 8.1 of the Development Agreement;

D.     Awarding Pradera SFR pre- and post-judgment interest; and

E.     Ordering such other and further relief as the Court deems just and proper.

Date:  September 13, 2024

Respectfully submitted,

**STEPTOE LLP**

 */s/ Claudia Wilson Frost*
Claudia Wilson Frost
Texas Bar No. 21671300
Paul J. Stancil
Texas Bar No. 00797488
John D. Geilman
Texas Bar No. 24126765
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone:  (713) 221-2357
Facsimile:  (713) 221-2320
cfrost@steptoe.com
pstancil@steptoe.com
jgeilman@steptoe.com

**ATTORNEYS FOR PLAINTIFF
PRADERA SFR**